IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PHILIP PHILIPPOU, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:16-cv-695-SRW |
| | ) | |
| AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**[1]

This matter is before the court on defendant's motion for summary judgment on plaintiffs' claim for breach of contract, which is set out in count I of the original complaint, and its claim for bad faith, which is set out in count III of the original complaint. Doc. 38. Plaintiffs filed a response to the motion conceding that the bad faith claim should be resolved in the defendant's favor. Doc. 40 at 2-3. Defendant filed a reply to the motion. Doc. 41. Upon review of the motion and the record, the court concludes that the motion for summary judgment is due to be granted.

## **SUMMARY JUDGMENT STANDARD**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For summary judgment purposes, an issue of fact is "material" if,

---

[1] The parties consented to final dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 17; Doc. 18).

under the substantive law governing the claim, its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant fails to satisfy its initial burden, the motion for summary judgment will be denied. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 1810 (2013). If the movant adequately supports its motion, the burden shifts to the opposing party to establish – "by producing affidavits or other relevant and admissible evidence beyond the pleadings" – specific facts raising a genuine issue for trial. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010); Fed. R. Civ. P. 56(c)(1)(A). "All affidavits [and declarations] must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence[.]" *Josendis*, 662 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). The court views the evidence and all reasonable factual inferences in the light most favorable to the nonmovant. *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d at 1315; Fed. R. Civ. P. 56(c)(4). However, "the nonmoving party 'must do more than show that there is some metaphysical doubt as to the material facts,'" and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (internal citations omitted). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997)

(per curiam) (conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## BACKGROUND

Plaintiffs commenced this action based upon an insurance contract on their residential property. Doc. 1 at 2. The complaint alleges claims against the defendant, the insurer, for breach of contract (count I), intentional infliction of emotional distress or "outrage" (count II), bad faith (count III), negligence (count IV), recklessness and wantonness (count V), and gross negligence (count VI). Doc. 1 at 4-7. Defendant filed a motion to dismiss counts II, IV, V, and VI. Doc. 6 at 2. Plaintiffs stipulated to dismissal of counts IV, V, and VI and requested leave to amend their count II claim for intentional infliction of emotional distress. Doc. 10. The court granted leave to amend, Doc. 13, and plaintiffs filed an amended claim for intentional infliction of emotional distress, Doc. 15. Defendant then filed a motion to dismiss count II. Doc. 19. This court dismissed counts IV (negligence), V (recklessness and wantonness), and VI (gross negligence) with prejudice in accordance with plaintiffs' stipulation to dismissal of those counts, and granted defendant's motion to dismiss count II, leaving only plaintiffs' count I (breach of contract) and count III (bad faith) claims before the court. Doc. 23. Defendant's motion for summary judgment followed. Doc. 38.

Defendant's motion for summary judgment contends that plaintiffs' failure to submit a sworn proof of loss – a required condition precedent to receiving coverage under

3

the insurance policy – constitutes a breach of contract which precludes their claims, and also that defendant fully performed its obligations under the contract. Doc. 38 at 16. In addition, defendant contends that it did not act in bad faith because it had more than one lawful basis to deny further payment on plaintiffs' claim, and because it did not intentionally fail to determine the existence of a lawful basis for denial. *Id.* at 21-27.

In their response to defendant's motion for summary judgment, plaintiffs concede that defendant is due summary judgment on the bad faith claim, and that the facts set forth in defendant's motion are not in dispute. Doc. 40 at 2-3. Furthermore, plaintiffs concede that there is no dispute of fact as to whether they failed to submit a sworn proof of loss as a condition precedent to their insurance contract. *See id.* at 4-5. Instead, plaintiffs argue that defendant's timely payments on their claim, despite repeated demands for a sworn proof of loss and plaintiffs' failure to produce one, present a dispute of fact as to whether defendant waived the proof of loss condition by virtue of its conduct. *Id.* at 3-5.

## UNDISPUTED MATERIAL FACTS

In considering defendant's motion for summary judgment, the court views the facts in the light most favorable to the non-moving parties, the plaintiffs. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

    A.    Plaintiffs' Policy and Insurance Coverage[2]

---

[2] These are the facts for summary judgment purposes only. They may or may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.") (citation and marks omitted). Also, the "facts" set out herein are gleaned from the parties' evidentiary submissions but not from counsels' unsubstantiated statements in the parties' briefs. "Statements by counsel in briefs are not

Defendant issued a homeowner's insurance policy to plaintiffs for their residence in Montgomery, Alabama with the effective dates of August 4, 2014 to August 4, 2015. Doc. 38-2 ¶ 2; Doc. 38-2 at 8-9; Doc. 38-3 at 7-8. The policy provides coverage for accidental direct physical loss to the Plaintiffs' dwelling from all perils, with certain enumerated exceptions. Doc. 38-8 at 39-41. The policy also provides replacement cost coverage for damage to both the dwelling and personal property, and additional living expenses if the residence becomes uninhabitable. *Id.* at 43, 53. According to the policy's loss settlement provisions, payment for the dwelling is for "the actual cash value of the damage not to exceed the applicable limit of liability, until actual repair or replacement is completed." *Id.* at 52.

The policy also contains provisions which outline the duties required of the plaintiffs, the insured, as conditions of payment: to notify the insurer of loss; to protect the property from further damage; to make reasonable and necessary repairs to protect the property and keep accurate record of repair costs; to prepare an inventory of damaged property including quantities, descriptions, actual cash value and amount of losses (attaching evidence to substantiate the loss figures); to exhibit the damaged property and provide the insurance company with records and documents it requests; and to submit, within 60 days after the insurer requests, a signed, sworn proof of loss. *Id.* at 42-43. The policy also specifies that the insurer "will pay [insured] within 60 days after [insurer]

---

evidence." *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). *See also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

5

receive[s] [insured's] proof of loss," that "[n]o action shall be brought unless there has been compliance with the policy provisions," and that any "waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights." *Id.* at 44, 49. Plaintiffs' policy carried a deductible of $1,000. *Id.* at 4.

B.     Details of Plaintiffs' Insurance Claim

On August 8, 2014, plaintiff Philip Philippou reported to defendant that plaintiffs' residence had sustained damage from a fallen tree. Doc. 38-2 ¶ 3. Defendant advised Philippou to arrange for removal of the tree, and to secure and protect any valuables in the property until an adjuster was able to inspect the loss. *Id.* Defendant arranged for Cunningham Lindsey, an independent adjusting company, to investigate plaintiffs' claim of loss, and Cunningham Lindsey assigned adjuster Jeffry Jackson to the case. *Id.*; Doc. 38-6 at 2-3. Jackson inspected plaintiffs' residence on August 11, 2014 with plaintiffs present, determined that there was roof, exterior, interior, ceiling and flooring, and foundation damage, and recommended that defendant solicit an engineering inspection. *Id.* at 3. Defendant retained Joel Wehrman of Wehrman Investigative Engineering to inspect plaintiffs' residence, and Wehrman conducted an inspection on August 14, 2014. *Id.* at 3. After Wehrman furnished an inspection report to Jackson on September 16, 2014, Jackson provided plaintiffs with a copy of the report, which stated that the property was repairable and that the slab damage pre-dated the fall of the tree and was unrelated to plaintiffs' claim. *Id.* at 3-4. After receiving Wehrman's report, Jackson prepared an estimate which contained a detailed line item for repair of each part of the damaged property, Jackson's

6

measurements, and the costs for each item. *Id.* at 4. Jackson determined that the actual cash value of the repairs was $103,929.46, and the replacement cost value of the damages to plaintiffs' residence totaled $149,286.69. *Id.* at 4. Based on plaintiffs' $1,000 deductible amount, Jackson recommended a payment of $102,929.46 to be due when the estimate was produced, and an additional $45,357.23 to be available if plaintiffs completed repairs and made a claim for the replacement cost value pursuant to policy provisions. *Id.* at 4.

On January 5, 2015, Jackson met with the plaintiffs and their contractor, Mike Preskitt, to secure photos of all property damage, and Preskitt informed Jackson that the city of Montgomery would require repair of foundation damage to the residence. Jackson repeatedly asked for documentation reflecting such requirements or an engineer's evaluation of the cause of damage to the foundation, but neither Preskitt nor plaintiffs provided any such documentation. *Id.* at 4-5. Jackson did not observe any repairs to the property until June 2015, when Preskitt informed him that he had obtained a permit to begin repairs and that he would need until August 30, 2015 to repair the house. *Id.* at 5. Based on Jackson's experience and his own inspection of the property, he believed that repairs to the house should have been completed by August 30, 2015. *Id.* at 6. However, an inspection of the house on that date revealed that repair work had not been completed. *Id.* In July and August of 2015, Jackson attempted to meet with Preskitt to review his estimate and documentation, and to reach an agreed-upon cost of repairs – an attempt that he repeated in October – but Preskitt did not provide Jackson with an estimate. *Id.* at 6-7. Preskitt did provide Jackson with bids to replace the duct and electrical systems. *Id.* at 6. Based on the cost of those repairs, Jackson revised his estimates of the replacement cost

7

value to $177,989 and an actual cash value of $122,883.04. *Id.* at 7. Neither Preskitt nor plaintiffs disputed Jackson's estimates. *Id.* at 7.

C.  Defendant's Requests for Sworn Proof of Loss from Plaintiffs

On August 11, 2014, three days after plaintiffs filed a claim with defendant for the damage to their home, defendant sent a letter to plaintiffs acknowledging their claim and requesting that they complete a contents inventory worksheet and provide purchase information, repair estimates, receipts, photographs, and any other information related to the claim. Doc. 38-2 ¶ 6. Defendant specifically requested that plaintiffs complete and return a sworn proof of loss in accordance with the plaintiffs' insurance policy and restated the policy's provision that "upon request, you are required to submit a signed proof of loss within sixty days from the receipt of this notice." *Id.* Defendant repeated its request for a sworn proof of loss and other supporting documentation, in writing, eight additional times: on September 10, 2014; September 19, 2014; October 11, 2014; November 10, 2014; January 9, 2015; March 6, 2015; December 23, 2015; and July 29, 2016. *Id.* ¶ 7. Neither plaintiffs nor anyone else submitted a proof of loss to defendant on behalf of plaintiffs in support of plaintiffs' claim. *Id.* ¶ 7.

D.  Payments Made by Defendant to Plaintiffs

On November 19, 2014, defendant issued a payment to plaintiffs, based on Jackson's agreed-upon estimate, in the amount of $102,929.46 by mail, and included a cover letter which provided instructions on how to make supplemental requests for recoverable depreciation if repairs were completed in a timely manner. Doc. 38-2 ¶ 12. On March 3, 2015, Mrs. Philippou informed defendant that the check issued in November had

not been received, and defendant also learned that repairs had not yet begun; defendant immediately issued a stop payment on the previous check and wrote a new check in the same amount at plaintiffs' request. *Id.* ¶ 16. After receiving Jackson's revised estimate in December 2015, defendant issued an additional payment of $18,953.98 to plaintiffs on January 14, 2016. *Id.* ¶ 18. Defendant also paid $11,510 to plaintiffs for tree removal; paid $15,679.89 directly to ServePro for the initial drying and remediation efforts; made advances to plaintiffs of $5,000 and $10,000 for personal property; paid $8,215.16 for storage and cleaning of personal property; and paid all costs for a rental home and rental furniture incurred by plaintiffs from September 2014 through August 2015 of $32,916.57. *Id.* ¶¶ 20-22. Defendant denied further living expense payments to plaintiffs after August 2015. *Id.* ¶ 22.

## DISCUSSION

Defendant moves for summary judgment on the ground that plaintiffs breached an express condition precedent to coverage which precludes their claims. In this diversity action, the court applies the law of Alabama to the parties' claims and defenses. "Under the doctrine enunciated in *Erie* and its progeny, "federal courts sitting in diversity apply state substantive law and federal procedural law."" *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996), and citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). Alabama law makes it clear that insured persons must meet contract conditions precedent to recovery in order to prevail in breach of contract claims, and Alabama courts have routinely awarded summary judgment to insurers where the insureds failed to meet conditions precedent to

recovery, such as requirements to submit proof of loss. *See, e.g. Morton v. Auto Ins. Co.*, 102 F. Supp. 32 1248, 1262-63 (N.D. Ala. 2015) (where insured failed to submit an examination under oath); *Pittman v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1335, 1348 (M.D. Ala. 2012) (construing post-loss duty provisions as strict conditions precedent to coverage), *aff'd* 519 F. App'x 656 (11th Cir. 2013); *Hillery v. Allstate Indem. Co.*, 705 F. Supp. 2d 1343, 1362 (S.D. Ala. 2010) (insured did not provide amended claim/inventory forms after stating that the submitted forms were inaccurate); *Baldwin Mut. Ins. Co. v. Adair*, 181 So. 3d 1033, 1045 (Ala. 2014) ("[A]n insured must comply with his or her post-loss obligations when the insured is making a claim upon the insurer, and meeting those obligations is a precondition to any duty on the part of the insurer to make a loss payment."); *Nationwide Ins. Co. v. Nilsen*, 745 So. 2d 264, 267 (Ala. 1998) ("[A]n insurer's obligation to pay or evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims.").

Plaintiffs' insurance policy contained a section called "Your Duties After Loss" which obligated the insured to "submit … within 60 days after we request, your signed, sworn proof of loss." Doc. 38-8 at 43. As noted above, defendant requested plaintiffs' sworn proof of loss three days after plaintiffs made a claim, repeated the request on eight separate occasions over a period of 23 months, and never received a sworn proof of loss from plaintiffs or anyone else on behalf of plaintiffs. *See supra,* Undisputed Material Facts Part C. Thus, the undisputed Rule 56 record evidence shows that plaintiffs failed to submit a sworn proof of loss within 60 days of defendant's request in compliance with the terms of their insurance policy with defendant. Plaintiffs do not dispute that defendant did not

10

receive a sworn proof of loss, despite its having requested such a document from plaintiffs on numerous occasions. Thus, plaintiffs cannot sustain their breach of contract claim against defendant, and summary judgment is due to be granted on that claim in favor of defendant.

Plaintiffs alternatively argue that there is a genuine dispute about whether defendant waived the proof of loss condition of its agreement with plaintiff. In examining waiver, Alabama law looks to the behavior and statements of a party in order to determine whether there was requisite intent:

> The question of waiver, the voluntary surrender of a known right, is in the main a question of intention, and the authorities hold that, to be effectual, it must be manifested in some unequivocal manner; if not express, then by such language or conduct as to evince clearly the intention to surrender … To constitute waiver, there must be an intention to relinquish the right, or there must be words or acts calculated to induce the other contracting party to believe, and which deceive him into the belief, that the holder of the right has abandoned it … A waiver will not be implied from slight circumstances, but must be evidenced by an unequivocal and decisive act, clearly proved.

*Ex Parte Textron, Inc.*, 67 So. 3d 61, 66 (Ala. 2011) (internal citations and quotations omitted). Plaintiffs cite *ECR Props., LLC v. Camden Cty. Dev., LLC* for the proposition that a "[w]aiver is the voluntary surrender of a known right and must be manifested in some unequivocal manner" which "must be evidenced by an unequivocal and decisive act, which must be clearly proved." *ECR Props., LLC v. Camden Cty. Dev., LLC*, 998 F. Supp. 2d 1295, 1307 (M.D. Ala. 2014) (citing *Ex Parte Textron*, 67 So. 3d at 66). Plaintiffs insist that defendant's payments totaling more than $205,000, made without receipt of a sworn proof of loss, are "unequivocal and decisive," and they create a dispute of material fact in the case. Doc. 40 at 4-5. However, the court in *ECR Props.* further stated that "[w]hile

defense of waiver is ordinarily a question of fact, a court may determine the issue of waiver if only one reasonable inference can be drawn from the evidence." *Id.* at 1307 (citing *McMillan Ltd. v. Warrior Drilling & Eng'g Co.*, 512 So. 2d 14, 38 (Ala. 1986)). Applying the full reasoning of *Ex Parte Textron*, as interpreted by *ECR Props.*, to the instant case, the evidence of record demonstrates that the only reasonable inference that can be drawn is that defendant did not waive its right to require plaintiffs to submit a proof of loss.

The court in *ECR Props.* noted that a voluntary and unequivocal waiver of a right must be clearly proved and must clearly evince the intention to surrender a known right. *ECR Props.*, 998 F. Supp. 2d at 1307. *ECR Props.* concerned the transfer of property in a real estate development deal in which an operating agreement signed by the two parties specified that once cash was transferred to a third entity by one party, the second party would transfer title to that third entity, and each party was to hold a 50 percent interest in the third entity. *Id.* at 1300-01. The second party, Camden, argued that an email from the first party, ECR, which was sent before the waiver was executed and stated that ECR required transfer of the deed and execution of the agreement before transferring the cash – along with ECR's subsequent transfer of cash, without having received the deed – constituted waiver of its right to timely transfer of the deed. *Id.* at 1307.[3] On the other hand, ECR attempted to procure the transfer deed from Camden in the days and months following

---

[3] The court in *ECR Props.* held that the email in question was inadmissible parol evidence, noting that the operating agreement contained a merger clause, and that the terms of the agreement clearly required ECR to transfer the money before Camden transferred the property to Rivers. *ECR Props.*, 998 F. Supp. 2d at 1307-08. However, the court's examination of evidence relevant to determining waiver is applicable to the instant case.

the execution of the operating agreement in November 2010, and directly requested transfer of the property from Camden several more times in 2011 and 2012, before ceasing to perform its other obligations under the operating agreement. *Id.* at 1302-03. Noting the numerous attempts by ECR to obtain a transfer deed from Camden, the court held that Camden had failed to show a genuine dispute as to whether ECR waived its right to timely performance by Camden, and granted summary judgment to ECR on its breach of contract claim. *Id.* at 1309, 1312.

Although the instant case is factually distinguishable from *ECR Props.*, this court agrees that, as in *ECR Props.* – where ECR's repeated emails and attempts to obtain a transfer deed from Camden demonstrated no intent to waive its right to timely performance – in the instant case, defendant's repeated insistence on production of a sworn proof of loss by plaintiffs demonstrates that defendant never intended to waive the proof of loss provision. In fact, defendant's intent to enforce the proof of loss provision is evidenced by multiple letters sent to plaintiffs requesting a sworn proof of loss in accordance with the insurance agreement, and plaintiffs' acknowledgement that such letters were received, which clearly show that defendant made no decisive or unequivocal act which evinced waiver of its right to require a sworn proof of loss from plaintiffs. Plaintiffs' contention that defendant waived the proof of loss requirement because it made payments to plaintiffs without threatening denial of plaintiffs' claim is not supported by the undisputed evidence in this case. Defendant's demands for a proof of loss do not demonstrate any express waiver or intention to relinquish its right to enforce the proof of loss condition, and cannot be construed as words or actions which were calculated to induce plaintiffs to believe that it

ever waived such right. Plaintiffs have failed to show there is a genuine dispute concerning whether defendant waived its right to require a sworn proof of loss under the insurance agreement and, therefore, defendant's motion for summary judgment is due to be granted.

## CONCLUSION

For the foregoing reasons, its it ORDERED that defendant's motion for summary judgment as to counts I and III is GRANTED, and plaintiffs' claims of breach of contract and bad faith by defendant are DISMISSED with prejudice.

The Clerk of Court is DIRECTED to close this file.

A separate final judgment will be entered.

DONE, on this the 4th day of December, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge